# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Robbie Collins, | Case No. 2:23-001169-RMG-MGB |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Lt. Taylor, *et al.*, | |
| Defendants. | |

Before the Court is the report and recommendation (R&R) of the Magistrate Judge recommending that Defendants' motion for summary judgment be granted. (Dkt. No. 106). Also before the Court is the R&R of the Magistrate Judge recommending that Plaintiff's motion for a temporary restraining order (TRO) be denied. (Dkt. No. 104). For the reasons set forth below, the Court adopts both R&Rs as the Order of the Court, granting Defendants' motion (Dkt. No. 73) and denying Plaintiff's motion (Dkt. No. 81).

## I.      Background

Plaintiff Robbie Collins is an incarcerated person proceeding *pro se* to bring a claim under 42 U.S.C. § 1983 against Defendants, whom Plaintiff alleges violated the Eighth Amendment by failing to protect him from a substantial and known risk of harm and denying him medical care after he was attacked by other inmates. (Dkt. No. 1). Defendants moved for summary judgment, arguing that (1) Plaintiff failed to exhaust administrative remedies prior to bringing this lawsuit, (2) Plaintiff's § 1983 claims fail as a matter of law, and (3) Defendants are entitled to qualified immunity. (Dkt. No. 73). The Magistrate Judge issued an R&R recommending Defendants' motion for summary judgment be granted. (Dkt. No. 106).

Separately, Plaintiff moved for a Temporary Restraining Order on February 8, 2024. (Dkt. No. 81). Plaintiff first contends that he has been limited to only twenty (20) sheets of paper and

five (5) envelopes per month despite SCDC policy that inmates with pending litigation have unlimited access to legal materials. (*Id.* at 1). He next claims that he is being denied medical attention, and asks this Court to compel SCDC medical staff to conduct a "colonoscopy, endoscopy, biopsy, left foot surgery," examine Plaintiff's "shoulder pains and pains when plaintiff inhale," and "order plaintiff shoes due to his indigency status and previous foot surgery on plaintiff right foot." (*Id.* at 2). The Magistrate Judge issued an R&R recommending that Plaintiff's Motion for a Temporary Restraining Order be denied. (Dkt. No. 104).

Plaintiff filed one set of objections. (Dkt. No. 108). Defendants replied. (Dkt. No. 109).

## II.    Legal Standard

### A.  Review of R&R

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where the plaintiff objects to the R & R, the Court "makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Where the plaintiff has not objected to the R&R, the Court reviews the R&R only to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection ... we do not believe that it requires any explanation.").

### B. Motion for Temporary Restraining Order

"The standard for granting a temporary restraining order or a preliminary injunction is the same." *Cricket Store 17, LLC v. City of Columbia*, 996 F. Supp. 2d 422, 427 (D.S.C. 2014). Importantly, "[a] district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir.), *opinion amended on reh'g*, 131 F.3d 950 (11th Cir. 1997). It follows that district courts should not grant temporary restraining orders when the temporary restraining order "deals with a matter lying wholly outside of the issues in the suit." *Id.*

The reasoning for this rule is straightforward: "Ex parte temporary restraining orders... should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Thus, when a party moves for a temporary restraining order on an issue outside of the suit, the underlying purpose of the temporary restraining order is absent.

### C. Motion for Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact" and is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008

(4th Cir. 1996). The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

#### A.  Plaintiff's Motion for a Temporary Restraining Order

Plaintiff alleges violation of his Eighth Amendment rights in his complaint but moves for a temporary restraining order under a theory of retaliation. (Dkt. No. 81 at 1-2). Plaintiff asks that this Court compel SCDC to permit him access to legal materials and a number of medical procedures. (*Id.* at 2). The R&R determined that Plaintiff's claims that he has been denied unlimited legal materials and medical attention as part of a "campaign of retaliation" by SCDC at Lee Correctional Institution are unrelated to his Eighth Amendment claim regarding events that allegedly occurred at McCormick Correctional Institution. (Dkt. No. 104 at 4). The R&R reasoned that, even if the Court were to assume that the basis of the suit and the temporary restraining order were the same, Plaintiff failed to carry his burden to demonstrate a likelihood of success on the merits or more than a possibility of irreparable harm. (*Id.* at 4-5).

Plaintiff does not object to the R&R, and accordingly, this Court reviews the R&R only for clear error. *Camby*, 718 F.2d at 199. Finding none, the Court agrees with the conclusion of the Magistrate Judge that Plaintiff's motion should be denied because there is no evidence tying Plaintiff's claims of retaliation at Lee to his Eighth Amendment claims arising from events at

McCormick Correctional Institution. (Dkt. No. 104 at 4).  Accordingly, Plaintiff's motion for a temporary restraining order is denied.

### B.  Defendants' Motion for Summary Judgment

Plaintiff objects to the R&R's finding that he failed to exhaust administrative remedies prior to bringing this lawsuit. (Dkt. No. 108 at 3).  The Court accordingly reviews this part of the R&R *de novo*.

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit under § 1983. 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The administrative remedies are dictated by the prison. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016).  Specifically, an administrative remedy is not "available"—meaning, the remedy, "although officially on the books, is not capable of use to obtain relief"—in at least three circumstances. *Ross*, 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Meaning, the "administrative officials have apparent authority, but decline ever to exercise it." *Id.* Second, a remedy is unavailable where the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Last, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In this situation, "officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to trip up all but the most skillful prisoners" or threaten the inmate. *Id.* (internal quotation marks and citation omitted). The prisoner bears the burden of demonstrating that an administrative remedy is unavailable. *See Graham v. Gentry*, 413 F.App'x 660, 663 (4th Cir. 2011). Absent such evidence that the administrative remedy was unavailable, failure to exhaust administrative remedies will bar actions filed under federal law. *See Woodford v. Ngo*, 548 U.S. 81 (2006).

SCDC employs an inmate grievance process that, with limited exceptions, consists of three steps. First, the inmate must attempt an informal resolution by submitting a Request to Staff Form ("RTSM Form") or Automated Request to Staff Member Form ("ARTSM Form") within eight (8) working days of the incident. If the incident involves allegations of criminal activity, an RTSM Form is not required, but the inmate must file a Form 10-5 Step 1 Grievance within five days of the alleged criminal activity. Otherwise, within eight days of receiving a response to the RTSM or ARTSM Form, the inmate must submit a Step 1 Grievance Form that attaches the answered RTSM or ARTSM reference number and supporting documentation. If the institution's IGC determines that the Grievance Form is missing information or documentation, the Step 1 Grievance Form will be returned to the inmate, who has ten (10) working days to resubmit with the required information. If the inmate is not satisfied with the Warden's Decision in response to his Step 1 Grievance Form, he has five (5) days from receiving the response to appeal the decision by submitting a Step 2 Grievance Form. The SCDC's response to the Step 2 Grievance Form is considered the agency's final determination, at which point a prisoner's administrative remedies have been exhausted. (Dkt.

No.      73-4;      *see      also*      SCDC      Policy      GA-01.12,

*https://doc.sc.gov/sites/doc/files/Documents/policy/GA-01-12.pdf*).

Plaintiff argues that SCDC rendered administrative remedies unavailable to him by failing

to treat his complaint as an as emergency grievance.  (Dkt. No. 108 at 3, 5).  On February 17, 2023

– the same day that Plaintiff alleges he was assaulted by other inmates after Lt. Taylor publicly

called him a snitch and propped open his door so that he could be attacked – Plaintiff filed a Step

I Grievance, which the IGC received on February 22, 2023. (Dkt. No. 73-4, ¶ 20; *see also* Dkt.

No. 73-5 at 1).  He also mailed a letter to SCDC General Counsel's Office on February 17, 2023,

which was received on February 22, 2023. (*See* Dkt. No. 91-1).  Warden Palmer issued a denial of

Plaintiff's Step I Grievance on March 14, 2023 – twenty (20) days after the IGC received the Step

1 Grievance. (*Id.* ¶ 22; *see also* Dkt. No. 73-5 at 2).  Plaintiff appealed the denial on March 15,

2023. (*Id.* ¶ 23; *see also* Dkt. No. 73-5 at 2).  Shortly after filing his Step II appeal, Plaintiff filed

this lawsuit on March 24, 2023. (Dkt. No. 1).  Plaintiff's Step II appeal was denied April 17, 2023.

(*Id.* ¶ 23; *see also* Dkt. No. 73-5 at 3).

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff contends

that SCDC should have processed his February 17, 2023 letter to SCDC General Counsel as an

emergency grievance, which would have required the Warden to respond within seven (7) working

days after receiving the grievance from the IGC. (Dkt. No. 91 at 1-3; *see also* SCDC Policy GA-

01.12). However, in his Objections to the R&R, Plaintiff "objects to the Magistrate Judge

construing Plaintiff's letter as an emergency grievance." (Dkt. No. 108 at 1).  The R&R determined

that "there is no basis to find that the letter should have been processed as an emergency grievance

or otherwise exempted Plaintiff from complying with the grievance process." (Dkt. No. 106 at 15).

This Court agrees, and overrules Plaintiff's objection.

Plaintiff next objects that administrative remedies were unavailable to him because his Step 1 Grievance was not forwarded to Branch Chief Felicia McKie, nor did the Warden respond within seven (7) days. (Dkt. No. 108 at 4-5).  He explains that, because he did not first pursue informal resolution by filing an RTSM or ARTSM Form, prison officials were on notice that his grievance was an Emergency Grievance, but nonetheless failed to process it as such. (*Id.* at 3).  In Defendants' view, Plaintiff's Grievance was a standard Step I Grievance and "was timely appealed through the use of a Step 2 Grievance." (Dkt. No. 92 at 3).

The Court overrules Plaintiff's objection that administrative remedies were unavailable to him.  The record reflects that despite Plaintiff's failure to file an RTSM or ARTSM Form, which is the first step in the SCDC Grievance Process, Defendants nonetheless processed his Step 1 Grievance, which Plaintiff appealed.  It is Plaintiff's filing of this case prior to receiving a decision on that appeal that results in his claims being unexhausted, not that "prison administrators thwarted [his] ability of taking advantage of the Emergency Grievance through machination."  (Dkt. No. 108 at 4).  In South Carolina, "exhaustion must occur before the complaint is filed, and . . . exhaustion generally occurs when the Step 2 grievance is complete." *Byrd v. Stirling*, 144 F. Supp. 3d 803, 809 (D.S.C. 2015); *see also Wilson v. Givens*, No. 921CV00523RMGMHC, 2022 WL 2500356, at *3 (D.S.C. May 9, 2022), *report and recommendation adopted*, No. 9:21-523-RMG, 2022 WL 2128548 (D.S.C. June 14, 2022) (finding that Plaintiff failed to exhaust his claims by filing his federal lawsuit prior to the denial of his Step 2 Grievance).  Nor does the fact that Plaintiff's claim was not processed as an emergency grievance render the SCDC administrative process unavailable to him, given that "SCDC's Inmate Grievance System still has an appeals process for [emergency grievances and grievances alleging criminal activity] . . . [a]nd Plaintiff never completed the appeals process." *B.J.P. v. S.C. Dep't of Corr. by & through Stirling*, No.

8

1:22-CV-2840-RMG, 2024 WL 1172772, at *4 (D.S.C. Mar. 19, 2024). In other words, the mere fact that Plaintiff may have intended his grievance to be processed as an emergency does not automatically warrant its treatment as such, and SCDC's processing of his grievance through normal procedures did not render administrative remedies unavailable to Plaintiff as a result. That Plaintiff was still actively pursuing his administrative remedies upon filing this lawsuit is evidence in and of itself that such remedies were not unavailable to him.

After examination of the record, the R&R and objections, this Court agrees with the Magistrate Judge's conclusion that Defendants are entitled to summary judgment upon showing that Plaintiff did not exhaust available administrative remedies prior to filing this suit.

## IV.    Conclusion

In light of the foregoing, the Court **ADOPTS** the R&Rs (Dkt. Nos. 104, 106) as the Order of the Court, **DENIES** Plaintiff's motion for a Temporary Restraining Order (Dkt. No. 81) and **GRANTS** Defendants' motion for summary judgment (Dkt. No. 73).

**AND IT IS SO ORDERED.**


_s/Richard M. Gergel_
Richard Mark Gergel
United States District Judge

May 16, 2024
Charleston, South Carolina